296 Ga. 817
FINAL COPY

S14A1625.  WILLIAMS v. THE STATE.

HINES, Presiding Justice.

Following a bench trial, John Cletus Williams was convicted of driving under the influence of drugs ("DUI"), OCGA § 40-6-391 (a) (2), and failure to maintain lane, OCGA § 40-6-48 (1).[1] He had moved unsuccessfully to suppress the results of a state-administered blood test[2] on the basis that the test, obtained without a search warrant, violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution.[3] His challenge is that Georgia's implied consent statute, OCGA § 40-5-55,[4] is unconstitutional as applied in his case because consent

---

[1] Williams was given two consecutive misdemeanor sentences.

[2] The motion also requested the suppression of "in-custody questioning."

[3] The motion to suppress also alleged violation of the Fifth Amendment to the United States Constitution, but this ground was later withdrawn.

[4] OCGA § 40-5-55 provides in relevant part:

> (a) The State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of Code Section 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily

obtained solely under the statute does not amount to voluntary consent for purposes of the Fourth Amendment and the related provision of the State Constitution.[5] For the reasons that follow, we vacate the judgments of the state court and remand the case to that court for reconsideration of Williams's motion to suppress and any consequent proceedings.

The transcript of the hearing of the motion to suppress and the immediately following bench trial reveal the following facts, which were either stipulated at trial or are not in dispute. On September 22, 2012, Williams was

---

substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities. The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391. The test or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities. Subject to Code Section 40-6-392, the requesting law enforcement officer shall designate which of the test or tests shall be administered, provided a blood test with drug screen may be administered to any person operating a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities. . . .

[5] Ga. Const. of 1983, Art. I, Sec. I, Par. XIII contains the same language as the guarantee in the Fourth Amendment to the United States Constitution that there is "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This Court has held that Paragraph XIII is applied in accord with the Fourth Amendment in the context of such guarantee. *Brown v. State*, 293 Ga. 787, 791, n.6 (750 SE2d 148) (2013).

arrested by an officer of the Gwinnett County Police Department and charged with DUI and failure to maintain lane; the officer had "reasonable articulable suspicion" to stop Williams and probable cause to arrest him. Williams was placed in custody but was not advised of his *Miranda*[6] rights. The officer read Williams the age-appropriate statutory implied consent notice[7] and pursuant to it requested that Williams submit to blood and urine tests. The officer told Williams that it was "a yes or no question," and Williams verbally responded "yes." There was no other conversation about consent for the testing, i.e., the officer did not ask Williams "if [Williams] was willing to freely and voluntarily give a test." The officer "read [Williams] the implied consent and that was pretty

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[7] The applicable implied consent notice for suspects age 21 or over is found in OCGA § 40-5-67.1 (b) (2), and states:

> "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?"

3

much the end of it."  It "was an ordinary DUI," there "were no exigent circumstances," and no search warrant was obtained. Williams was taken to a medical center where blood and urine samples were taken for the purpose of his criminal prosecution.

The state court denied Williams's motion to suppress his blood test,[8] expressly rejecting the "reasoning" that statutory implied consent implicated Fourth Amendment concerns, and the contention that the statutory consent, in and of itself, was not a valid exception to the Fourth Amendment's requirement of a search warrant.  The state court's analysis is flawed.

A suspect's right under the Fourth Amendment to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood, and the extraction of blood is a search within the meaning of the Georgia Constitution. *Cooper v. State*, 277 Ga. 282, 285 (III) (587 SE2d 605) (2003).  In general, searches are of two types: those conducted  with a search warrant or those undertaken without one, and searches conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject only to a few

---

[8] Neither Williams's constitutional challenge in his motion to suppress or his arguments on appeal address his given urine sample, but only the blood test and its results.

specifically established and well-delineated exceptions. *State v. Slaughter*, 252 Ga. 435, 436 (315 SE2d 865) (1984), citing *Coolidge v. New Hampshire*, 403 U. S. 443, 454-455 (91 SCt 2022, 29 LE2d 564) (1971). Thus, a warrantless search is presumed to be invalid, and the State has the burden of showing otherwise. *State v. Slaughter*, supra, citing *Mincey v. Arizona*, 437 U. S. 385, 390-391 (98 SCt 2408, 57 LE2d 290) (1978), and *McDonald v. United States*, 335 U. S. 451, 456 (69 SCt 191, 93 LE 153) (1948).

The first well-recognized exception to the warrant requirement in the context of a state-administered blood test is the presence of exigent circumstances. The United States Supreme Court in *Schmerber v. California*, 384 U. S. 757 (86 SCt 1826, 16 LE2d 908) (1966), addressed the Fourth Amendment implications of a warrantless blood draw in a DUI case. The Supreme Court stated it was to determine "whether the police were justified in requiring [the petitioner in that case] to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." 384 U. S. at 768. The *Schmerber* court acknowledged that "[w]hile early cases suggest[ed] that there is an unrestricted 'right on the part of the [g]overnment . . . to search the person of

5

the accused when legally arrested, to discover and seize the fruits or evidences of crime,'" the "mere fact of a lawful arrest" did not end the inquiry. Id. at 769. This was so because such suggestion was premised on the possibility of "more immediate danger of concealed weapons or of destruction of evidence under the direct control of the accused," and because once there was a permitted weapons search of the arrested person it would be "both impractical and unnecessary" to achieve the purpose of the Fourth Amendment "to attempt to confine the search to those objects alone." Id. However, the Court concluded that such considerations had "little applicability with respect to searches involving intrusions beyond the body's surface," and that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained." Id. at 669, 670. Accordingly, "[i]n the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." Id. at 770. The Court reasoned that inasmuch as "[s]earch warrants are ordinarily required for searches of dwellings," there could not be a lesser requirement in the instance of "intrusions into the human body," but noted this

6

was so "absent an emergency." Id. It then concluded that the officer in the case might reasonably have believed that there was an emergency, in the sense that the delay involved in obtaining a search warrant threatened the destruction of evidence, the threat and exigent circumstance being the diminishment of the concentration of alcohol in the blood shortly after the cessation of drinking as the body eliminates it from the system. Id. Also noting that in that case, time was taken to bring the accused to a hospital and to investigate the accident scene, the Court concluded there was no time to secure a warrant, and given the "special facts," the blood draw "was an appropriate incident to petitioner's arrest." Id. at 771. Thus, *Schmerber* established the legal nexus between the transient and dissipating nature of an intoxicant in the human body and presence of an exigency for the purpose of securing a blood test without the necessity of a search warrant.

This Court carried such nexus further in *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973), when it determined that in the situation in which there is probable cause to arrest an individual for DUI, the "evanescent nature of alcohol in the blood," in and of itself, necessitated that the defendant's blood sample be extracted in order "to prevent a failure of justice from a certain disappearance

of this evidence." Id. at 518. In other words, the dissipation of the intoxicant in the body automatically, as a matter of law, provided the exigency for a warrantless blood test incident to the arrest. However, prior to the bench trial and the denial of the motion to suppress in Williams's case, the United States Supreme Court issued its decision in *Missouri v. McNeely*, 569 U. S. ___ (133 SCt 1552, 185 LE2d 696) (2013), in which it rejected a per se rule that the natural metabolization of alcohol in a person's bloodstream constitutes an exigency justifying an exception to the Fourth Amendment's search warrant requirement for nonconsensual blood testing in all DUI cases. 569 U. S. ___ (133 SCt at 1556). Instead, it concluded that,

> while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.

Id. at 1563. Thus, to the extent that *Strong v. State* holds otherwise, it is hereby overruled. In the present case, there is no dispute that there were no exigent circumstances. Consequently, the analysis in this case must then focus on the voluntary consent exception to the warrant requirement because it is well settled in the context of a DUI blood draw that a valid consent to a search eliminates the

8

need for either probable cause or a search warrant. *Cooper v. State*, supra at 291 (VI), citing *Schneckloth v. Bustamonte*, 412 U. S. 218, 219 (93 SCt 2041, 36 LE2d 854) (1973).

As noted, it is uncontroverted that Williams submitted to the blood test after the police officer read him the implied consent notice for suspects age 21 or over.  However, in *Cooper v. State*, supra, this Court plainly distinguished compliance with the implied consent statute from the constitutional question of whether a suspect gave *actual consent* for the state-administered testing.  We emphasized such remaining question in regard to the validity of the consent, confirming that "[w]hen relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances." *Cooper v. State*, supra at 291 (VI), citing, inter alia, *Bumper v. North Carolina*, 391 U. S. 543 (88 SCt 1788, 20 LE2d 797) (1968).[9]  And, it can certainly be argued that the need for

[9] In *Cornwell v. State*, 283 Ga. 247 (657 SE2d 195) (2008), this Court stated that inasmuch as there was probable cause for Cornwell's arrest for DUI and the State had complied with statutory implied consent requirements, Cornwell could not complain that the state-administered urine test for the presence of alcohol and drugs violated his State and Federal Constitutional rights to be free from unreasonable searches and seizures; therefore, his motion to suppress was properly denied. Id. at 249 (2).  However, such statement was in direct response to Cornwell's argument that the implied consent statute was unconstitutionally applied to him because it permitted warrantless compelled testing of his bodily fluids without proof of the existence of exigent circumstances.  Our

9

the State to demonstrate *actual consent* for the purpose of exception to the warrant requirement and its constitutional implications is reinforced by the analysis of the United States Supreme Court in *McNeely.*

The facts of *McNeely* did not lend themselves to the Supreme Court expressly addressing the issue of a suspect's consent to the testing of bodily fluids as satisfying Fourth Amendment concerns because the defendant in that case refused to consent to a blood test, *McNeely*, 569 U. S. ___ (133 SCt at 1557); however, a plurality of the Court was plainly rejecting a per se rule for sustaining an exception to the Fourth Amendment's requirement of a search warrant in favor of a case-by-case assessment based on the totality of the circumstances, albeit in the narrow context of exigency. Id. at 1563. Nevertheless, sister states have considered statutory implied consent as an exception to the Fourth Amendment's warrant requirement in the wake of *McNeely*, and have reached varying conclusions as to whether *McNeely* governs that issue; but, what the cases seem to indicate is that mere compliance with statutory implied consent requirements does not, per se, equate to actual, and

determination, in no manner, intended to blur the distinction between implied consent and actual consent for the purpose of Fourth Amendment analysis.

therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant.  See, e.g., *People v. Harris*, ___ Cal.Rptr.3d ___, 2015 WL 708606 (Cal App. 4 Dist. 2015); *Weems v. State*, 434 SW3d 655 (Tex. App. 2014); *State v. Padley*, 354 Wis.2d 545 (849 NW2d 867) (Wis. App. 2014); *State v. Moore*, 354 Or. 493 (318 P3d 1133) (Or. 2013); *State v. Brooks*, 838 NW2d 563 (Minn. 2013).  See also *Cooper v. State*, supra at 291 (VI).

As the Wisconsin Court of Appeals aptly observed in *Padley*:

> "Implied consent" is not an intuitive or plainly descriptive term with respect to how the implied consent law works. . . . [It may be] a source of confusion. . . . [T]he term "implied consent" [may be] used inappropriately to refer to the consent a driver gives to a blood draw at the time a law enforcement officer requires that driver to decide whether to give consent. However, actual consent to a blood draw is not "implied consent," but rather a possible result of requiring the driver to choose whether to consent under the implied consent law.

*State v. Padley* at 564.

In considering Williams's motion to suppress, the state court failed to address whether Williams gave *actual consent* to the procuring and testing of his blood, which would require the determination of the voluntariness of the

11

consent under the totality of the circumstances.  Consequently, the judgments of the state court are vacated, and the case is remanded to that court for proceedings consistent with this opinion.

Judgments vacated and case remanded with direction.  All the Justices concur.


Decided March 27, 2015.

OCGA § 40-5-55; constitutional question. Gwinnett State Court. Before Judge Iannazzone.

Lance W. Tyler, for appellant.

Rosanna M. Szabo, Solicitor-General, Joelle M. Nazaire, Shane R. McKeen, Assistant Solicitors-General, for appellee.