**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 15, 2017**

# In the Court of Appeals of Georgia

A16A1807. JACKSON v. THE STATE.

BARNES, Presiding Judge.

Abraham Lincoln Jackson was charged with driving under the influence of drugs to the extent he was a less safe driver, possession of less than an ounce of marijuana, and speeding. He filed a motion to suppress, which the trial court denied after a hearing. We granted Jackson's application for an interlocutory appeal, and after reviewing the hearing transcript, we affirm for the reasons set forth below.

Jackson argues that the trial court erred in finding that he gave actual consent to have his blood drawn, and erred in holding that OCGA § 40-6-392 (a) (2) authorizes the testing of blood for drugs as well as alcohol. "On appeal from a ruling on a motion to suppress, we construe the evidence most favorably to affirm the trial court's factual

findings and judgment," but review conclusions of law de novo. *Brooks v. State*, 285 Ga. App. 624, 626 (647 SE2d 328) (2007).

1. Jackson moved to suppress the results of his blood test on the grounds that no exigent circumstances supported a warrantless search and that he did not give actual consent to the blood withdrawal, citing *Williams v. State*, 296 Ga. 817 (771 SE2d 373) (2015). The Supreme Court in *Williams* noted that a warrantless search is constitutional only if exigent circumstances are present or the suspect consents to the search, and "mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant." Id. at 822.

The State does not contend that exigent circumstances were present in this case, and therefore the issue is only whether Jackson gave actual consent to the search. Jackson argues that the State failed to produce evidence addressing the issue of actual consent other than strict compliance with the implied consent law, and since mere compliance alone is legally insufficient to establish actual consent, the trial court erred. We disagree.

> In conducting a totality of the circumstances analysis, we have considered
> a host of factors. A consent to search will normally be held voluntary if

the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent. The defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary. The defendant's failure to express an objection to the test or change his or her mind also is evidence of actual consent.

*Jacobs v. State*, 338 Ga. App. 743, 749 (2) (791 SE2d 844) (2016) (citation and punctuation omitted).

Here, the trial court correctly found under the totality of the circumstances that Jackson freely and voluntarily consented to the blood test. The arresting officer testified that after he stopped Jackson for speeding and spoke with him, the officer developed probable cause that Jackson was under the influence. He arrested Jackson and read him the implied consent language, and Jackson "agreed to the testing." That affirmative answer to the question posed by the implied consent language is necessarily part of the totality of the circumstances to be considered by the trial court. The officer further testified that he did not threaten Jackson, make any promises to him, or threaten him with bodily harm. Jackson was transported to the sheriff's office, where he was not strapped down but voluntarily extended his arm to have his blood drawn. No evidence indicates that the officer "used fear, intimidation, threat of physical punishment, or

lengthy detention to obtain the consent." *Cuaresma v. State*, 292 Ga. App. 43, 47 (2)

(663 SE2d 396) (2008). Nor does Jackson argue that youth, lack of education, or low

intelligence somehow negated the voluntariness of his consent.

Considering the law and the facts in the record, and affording proper deference

to the trial court that heard the officer's testimony first-hand, we find no error in the

trial court's denial of Jackson's motion to suppress the results of his blood test.

2. Jackson further argues that law officers are not authorized to request blood

testing for drugs, but may request "blood testing for alcohol only."[1] The trial court

found that "the consent, based upon Georgia's statutory scheme for DUI as a whole and

OCGA § [40-6-392 (a) (2)] in particular is not limited to testing for alcoholic content

only, and the State is authorized to test the substance for the presence of drugs."

Jackson's argument is based solely on the language of OCGA § 40-6-392 (a) (2),

considered in isolation, which provides:

---

[1] Jackson does not contend in this appeal that the results of his blood test should be suppressed because an unqualified person drew his blood for the purpose of testing it for drugs. See *Head v. State*, 246 Ga. 360, 363 (5) (271 SE2d 452) (1980) (stating "legislature is authorized to classify and treat alcohol differently from other drugs and defendant cannot complain if drug users are not entitled to have qualified persons conduct the tests"). Compare *Carr v. State*, 222 Ga. App. 776, 777-778 (1) (476 SE2d 75) (1996) (stating in dicta that blood drawn for purpose of determining alcohol *and* drug content must meet "qualified person" requirement of OCGA § 40-6-392 (a) (2)).

When a person shall undergo a chemical test at the request of a law enforcement officer, only a physician, registered nurse, laboratory technician, emergency medical technician, *or other qualified person may withdraw blood for the purpose of determining the alcoholic content therein*, provided that this limitation shall not apply to the taking of breath or urine specimens.

(Emphasis supplied.) "The fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Walker v. State*, 290 Ga. 696, 701 (2) (723 SE2d 894) (2012).

We disagree with Jackson's view of the plain meaning of this subsection. It does *not* provide that the State may only draw blood for the purpose of determining the alcoholic content; instead, it states *who* may draw blood "for the purpose of determining the alcoholic content therein." OCGA § 40-6-392 (a) (2). The fact that only qualified persons may withdraw blood to ascertain the presence of alcohol does not mean that the law enforcement officers have no authority to obtain a blood draw for the purpose of detecting drugs.

5

When OCGA § 40-6-392 (a) (2) is viewed in context with other portions of OCGA § 40-6-392 and OCGA § 40-5-55 (a), Jackson's argument in this case strains credulity. OCGA § 40-5-55 (a) provides that

> any person who operates a vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her *blood*, breath, urine, or other bodily substances *for the purpose of determining the presence of* alcohol or *any other drug*, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391[2]. . . . (Emphasis supplied.)

> 40-6-392 provides, in pertinent part:

> (a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391, *evidence of the amount of* alcohol or *drug in a person's blood*, urine, breath, or other bodily substance at the alleged time, *as determined by a chemical analysis of the person's blood*, urine, breath, or other bodily substance *shall be admissible*. Where such a chemical test is made, the following provisions shall apply:

---

[2] OCGA § 40-6-391 (a) (6) makes it unlawful for a person to "drive or be in actual physical control of any moving vehicle while . . . there is any amount of marijuana or a controlled substance . . . present in the person's blood or urine, or both, including the metabolites and derivatives of each or both without regard to whether or not any alcohol is present in the person's breath or blood."

(1) (A) Chemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. . . .

(2) When a person shall undergo a chemical test at the request of a law enforcement officer, only a physician, registered nurse, laboratory technician, emergency medical technician, or other qualified person may withdraw blood for the purpose of determining the alcoholic content therein, provided that this limitation shall not apply to the taking of breath or urine specimens.

OCGA § 40-6-392 "provides for the procedures to be used where the [S]tate administers the test. Thus, if a State-administered test complies with the statutory requirements in OCGA § 40-6-392 (a), the test results 'shall be admissible,' and conversely, if the State-administered test does not comply with the statute, it is inadmissible." *State v. Padgett*, 329 Ga. App. 747, 750 (1) (766 SE2d 143) (2014).

In this case, Jackson presented no evidence showing that the State-administered blood test for drugs did not comply with the statute. The statutory scheme expressly

authorizes law enforcement officers to request a chemical analysis of a person's blood for the purpose of determining the presence of drugs, provided the chemical analysis complies with the requirements of OCGA § 49-6-392 (a) (1) (A). *Padgett*, 329 Ga. App. at 750 (1) (affirming trial court's grant of motion to suppress where State conceded that chemical analysis of blood did not comply with the requirements of OCGA § 40-6-392 (a) (1) (A)).

As this case does not involve a blood draw "for the purpose of determining the alcoholic content therein," OCGA § 40-6-392 (a) (2) does not apply. And contrary to Jackson's argument on appeal, the fact that the Legislature did not mandate particular procedures for a chemical analysis of blood to detect the presence of drugs does not render such chemical analysis inadmissible. Cf. *Head v. State*, 246 Ga.at 363 (5). To hold otherwise would eviscerate the grounds for admissibility provided by OCGA § 40-6-392 (a) (1) (A).

Accordingly, the trial court did not err in denying Jackson's motion to suppress on this ground.

*Judgment affirmed. Rickman and Self, JJ., concur*.