**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2017**

# In the Court of Appeals of Georgia

A17A0470. THE STATE v. NICHOLSON.

McMILLIAN, Judge.

The State appeals the trial court's order granting Kevin Thomas Nicholson's motion to suppress the results of a state-administered chemical blood test, arguing that the trial court erred in concluding that Nicholson did not voluntarily consent to the test. For the reasons that follow, we agree and reverse.

"On appeal from a ruling on a motion to suppress, we defer to the trial court's factual findings and credibility determinations, but review de novo the court's application of the law to the undisputed facts." (Citation and punctuation omitted.) *State v. Depol*, 336 Ga. App. 191, 191 (784 SE2d 51) (2016). And, where, as here, the controlling facts are undisputed because they are plainly discernable from the patrol car-mounted video recording, those facts are reviewed de novo. Id.

So viewed, the record shows that at approximately 7:00 p.m. on the evening of June 7, 2014, a Georgia State Patrol Trooper saw that the driver of a motorcycle was not wearing a helmet. When the motorcycle, driven by Nicholson, pulled into a nearby parking lot, the trooper activated his patrol vehicle's lights, drove into the parking lot, and began a traffic-related investigation.[1] As soon as the trooper approached Nicholson, who was still seated on his motorcycle in an open area, he smelled the odor of intoxicants. While speaking with Nicholson about the need to wear a helmet, the trooper specifically noticed the odor of an alcoholic beverage coming from his breath, and Nicholson admitted to having consumed two beers. Because he had observed Nicholson driving a motorcycle without wearing a helmet, detected the odor of an alcoholic beverage, and received an admission from Nicholson that he had consumed alcohol, the trooper determined that it was appropriate for him to conduct an investigation to determine whether Nicholson was an impaired driver.

After instructing Nicholson, the trooper performed various standardized field sobriety tests, including the horizontal gaze nystagmus (HGN), the walk and turn, and

___

[1] The encounter was recorded by the trooper's patrol car camera, and a digital copy of the audio and video recording was admitted into evidence without objection at the motion to suppress hearing.

the one leg stand. The trooper observed six out of six clues for the HGN, four out of eight clues for the walk and turn, and two out of four clues for the one leg stand. Based on the results of those tests, including Nicholson's slurred speech and swaying, and in addition to his initial observations, the trooper believed that Nicholson was impaired due to the consumption of alcoholic beverages and placed him under arrest for driving under the influence and handcuffed him. The trooper then asked Nicholson how many alcoholic beverages he had actually consumed, and Nicholson changed his response to "two or three." The trooper also asked Nicholson if he understood he was under arrest for DUI, and he responded, "Uh, yes, sir. I guess."

Immediately following the arrest, the trooper read Nicholson Georgia's Implied Consent Notice for suspects over the age of 21 and asked whether Nicholson would agree to a state-administered chemical test of his blood. According to the trooper, Nicholson responded in the affirmative, indicating he was willing to undergo the blood test, and a review of the recording shows that Nicholson nodded his head yes in response to the trooper's question. The trooper took Nicholson to the Villa Rica Police Department where his blood was drawn by an employee of Ten-Eight

3

Forensics, a company the local Georgia State Patrol routinely uses to draw blood.[2] The trooper was present for the blood draw and observed that Nicholson was cooperative during the procedure, did not resist in any fashion, and did not object or withdraw his consent to the blood test.

In December 2014, the Carroll County Solicitor-General's Office filed a three-count accusation, charging Nicholson with driving under the influence (less safe), driving under the influence (per se), and failure to wear protective gear on a motorcycle.[3] Nicholson filed a motion to suppress the results of the blood test, which he later supplemented after our Supreme Court's decision in *Williams v. State*, 296 Ga. 817 (771 SE2d 373) (2015).[4] Following a hearing in May 2015,[5] at which the trooper was the only witness presented, the trial court issued an order granting the

---

[2] The results of the blood test indicated Nicholson had a blood alcohol concentration of 0.136.

[3] See OCGA §§ 40-6-391 (a) (1) and (5) and OCGA § 40-6-315.

[4] In *Williams*, the Supreme Court clarified that, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on a totality of the circumstances." (Citation and punctuation omitted.) *Williams*, 296 Ga. at 821.

[5] At the hearing, Nicholson conceded that he is not contesting the traffic stop or the trooper's reading of the implied consent warning.

4

motion to suppress. In its order, the trial court found that, following the trooper's correct reading of Georgia's implied consent notice, Nicholson agreed to the state-administered chemical test of his blood without objection and without withdrawing his consent. However, the trial court found that the State had proven only that Nicholson had submitted to the trooper's request and that this was insufficient to establish "factual consent."[6] This appeal followed.

1. In its first enumeration of error, the State asserts that the trial court erred in granting the motion to suppress because it incorrectly found that Nicholson's response was merely a "submission" and not a "factual consent." In *Williams*, our Supreme Court rejected a "per se rule automatically equating an affirmative response to the implied consent notice with actual consent to a search within the meaning of the Fourth Amendment." (Citation and punctuation omitted.) *McKibben v. State*, 340 Ga. App. 89, 92 (796 SE2d 478) (2017). The courts are now "charged instead with conducting a case-by-case analysis, considering the totality of the circumstances." (Citations and punctuation omitted.) Id. at 93. Thus, the results of a warrantless blood

---

[6] The trial court did find, however, even disregarding the results of the blood test, that there was probable cause for Nicholson's arrest and denied Nicholson's motion to dismiss.

test are subject to suppression unless the State establishes that the defendant freely and voluntarily consented to the test. Id.

"In conducting a totality of the circumstances analysis, we have considered a host of factors. A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent." (Citation omitted.) *Jackson v. State*, 340 Ga. App. 228, 228-29 (1) (797 SE2d 152) (2017). Moreover, "[t]he defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary. The defendant's failure to express an objection to the test or change his or her mind also is evidence of actual consent." (Citation omitted.) Id. at 229 (1).

Here, the undisputed facts show that Nicholson was neither injured nor threatened with harm during his interaction with the trooper. Nicholson appeared to be acting and responding rationally and did not appear to be confused or extremely intoxicated. Throughout their encounter, the trooper maintained a friendly demeanor and tone of voice and allowed Nicholson to ask questions. At one point, Nicholson asked if he could perform the walk and turn test on more even ground, and the trooper

readily agreed, moving his patrol vehicle so that the camera would be facing the area of the parking lot that Nicholson chose. Nor does Nicholson argue that youth, lack of education, or low intelligence somehow negated the voluntariness of his consent. See *McKibben*, 340 Ga. App. at 93.

Nicholson, however, argues that "this Court cannot overlook the wording of the implied consent notice itself and the effect this created on [Nicholson]." According to Nicholson, because the implied consent notice uses the word "submit" versus "consent," a defendant's submission to a search (via a state-administered blood test) under Georgia's implied consent statute is not the same as a defendant "actually consenting" to a search under the Fourth Amendment, an assertion that the trial court adopted in its order granting the motion to suppress.[7] However, this Court has previously considered and rejected this argument. See *Kendrick v. State*, 335 Ga. App. 766, 769-71 (782 SE2d 842) (2016) (implied-consent notice is not coercive in failing to inform suspect of right to refuse); *State v. Oyeniyi*, 335 Ga. App. 575, 578 (782 SE2d 476) (2016) (implied-consent notice is not misleading or an overstatement of penalties authorized by law).

---

[7] Georgia's implied consent notice applicable to suspects over 21 concludes with the question: "Will you submit to the state administered chemical tests of your [blood] under the implied consent law?" OCGA § 40-5-67.1 (b) (2).

Based upon our de novo review, we find that, under a totality of the circumstances, Nicholson freely and voluntarily consented to the blood test. Accordingly, we reverse the trial court's grant of Nicholson's motion to suppress. See *State v. Depol*, 336 Ga. App. 191, 200 (784 SE2d 51) (2016); *State v. Young*, 339 Ga. App. 306, 312 (793 SE2d 186) (2016) (where there is no evidence defendant's consent was anything but free and voluntary, trial court erred in granting motion to exclude).

2. Based on our holding in Division 1, the State's remaining enumeration of error is moot.

*Judgment reversed. Barnes, P. J., and Mercier, J., concur*.