**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 7, 2023**

# In the Court of Appeals of Georgia

A23A0949. BLAZEK v. THE STATE.

LAND, Judge.

This is the third appearance of this DUI case before this Court. In *State v. Blazek*, 353 Ga. App. 127 (836 SE2d 213) (2019) ("*Blazek I*"), the State appealed the trial court's decision granting Brian Blazek's motion to suppress the results of state-administered breath and field sobriety tests. Id. at 127. Because the trial court had relied on overruled precedent requiring a *Miranda* warning before a request to submit to a breath test,[1] we vacated the suppression order and remanded for consideration of

---

[1] See *State v. Turnquest*, 305 Ga. 758, 774-775 (4) (827 SE2d 865) (2019) (the Georgia Constitution does not require a *Miranda* warning before a suspect in custody is asked to submit to a breath test), overruling cases including *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998); *Elliott v. State*, 305 Ga. 179, 210 (IV) (824 SE2d 265) (2019) (the Georgia Constitution's right against compelled self-incrimination prohibits the State from introducing evidence of a defendant's refusal to take a breath test).

Blazek's remaining arguments. Id. at 129. On remand from *Blazek I*, the trial court denied the motion to suppress, and a jury found Blazek guilty of driving under the influence (DUI). On appeal from that judgment, we again vacated and remanded for a determination of whether the totality of the circumstances showed that Blazek had consented to the breath test when those circumstances included the reading of a superseded and inapplicable consent notice.[2] See *Blazek v. State* ("*Blazek II*"), 364 Ga. App. 128, 131-132 (874 SE2d 165) (2022). On second remand, the trial court concluded that under the totality of the circumstances, including Blazek's age, education, and intelligence, as well as his interaction with police, he "freely and voluntarily consented" to the breath test. On appeal from that ruling, Blazek again argues that his consent was invalid because of errors in the notice. We find no error and affirm.

We take the relevant standard of review and facts from our opinion in *Blazek II*:

---

[2] The notice was superseded by our Supreme Court's rulings in *Elliott* and *Turnquest*, supra, and inapplicable because its stated blood alcohol limit was 0.08 percent rather than the 0.04 percent applicable to commercial drivers. See OCGA § 40-6-391 (i).

Viewed in the light most favorable to the verdict, the evidence shows the following. [In July 2017,] Officer Michael Ricks with the Gwinnett County Police Department was dispatched to investigate a called-in complaint that Blazek had possibly been operating an 18-wheel tractor-trailer while intoxicated. Officer Ricks made personal contact with Blazek, who was standing next to his tractor-trailer. Ricks noted that Blazek had bloodshot eyes and a strong odor of alcohol coming from his person.

Blazek consented to voluntary field sobriety tests, which indicated impairment. Officer Ricks then asked Blazek to give a sample of his breath into the portable alco-sensor, and he consented. The test was positive for alcohol on his breath.

Officer Ricks determined that Blazek was a less-safe driver because of alcohol impairment and placed him under arrest. Ricks then read Blazek the then-current implied consent notice for civilian drivers, which included a warning that his refusal to submit to chemical testing could be used against him at trial and that his driver's license could be suspended if he tested and the results revealed a blood alcohol concentration of 0.08 grams or more. The officers did not read a *Miranda* warning. Blazek was then transported to the Gwinnett County Sheriff's Office, where he consented to a breath test using the Intoxilyzer 9000.

(Footnotes omitted.) *Blazek II*, 364 Ga. App. at 128-129.

On remand from *Blazek I*, and after the denial of his motion to suppress,

3

Blazek again objected to the introduction of the breath test results on the grounds that the implied consent notice contained an incorrect statement of the law and that he should have been read the notice for commercial drivers. The court summarily overruled the objection and allowed the result of the breath test to come into evidence.

*Blazek II*, 364 Ga. App. at 131. At trial, Blazek admitted to drinking "six or seven" high-alcohol beers while sitting in his truck, though he claimed he had done so after he had stopped driving for the day.

[T]he jury heard evidence that Blazek's blood alcohol content was 0.186. The jury found Blazek not guilty on the DUI (less safe) charge, but found him guilty of driving under the influence in that he had a blood alcohol concentration of 0.08 grams or more within three hours after his actual physical control of a moving vehicle ended.

Blazek filed an amended motion for new trial, again arguing that he could not have made a knowing and informed consent because the implied consent warning contained misstatements of law and overstated the applicable blood alcohol limit.

Id.

On appeal from the denial of his motion for new trial, Blazek again argued that the trial court erred "in not suppressing the results of his breath test as he did not knowingly and willingly consent and as he was induced by inaccurate statements in

4

the implied consent card and the understating of the legal limit for the type of vehicle he had been driving." *Blazek II*, 364 Ga. App. at 131. Because we concluded that the trial court had considered only a "per se challenge to the reading of the old implied consent notice," we vacated and remanded for consideration of "whether Blazek's consent to a breath test was voluntary under a totality of the circumstances," including his "'age, education, capacity, the nature of questioning, and any threats employed.'" Id. at 132, quoting *State v. Henderson*, 356 Ga. App. 473, 476 (847 SE2d 833) (2020); see also *Olevik v. State*, 302 Ga. 228, 251 (3) (b) (806 SE2d 505) (2017).

On remand from our decision in *Blazek II*, the trial court concluded that there was "no evidence in the record" that Blazek's decision to agree to a breath test "was affected by the content of the implied consent notice"; that he "performed all of the field evaluations," including the Intoxilyzer test; that he was not charged with a commercial DUI and did not lose any driving privileges as a result of his arrest; and that under all the circumstances – including his age (over 50), his education (literate), his "at least average intelligence" (as shown by his capacity to keep records and obey relevant regulations), the non-coercive nature of his interaction with police, and the "not unusually long" detention time – he "freely and voluntarily consented" to the breath test.

On appeal from this ruling, Blazek again argues that the reading of the incorrect implied consent notice rendered his consent involuntary.[3] We disagree.

Our Supreme Court has laid out "three fundamental principles which must be followed when conducting appellate review" of a ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010). This Court has also held that in conducting a totality of circumstances test, a court considers "a host of factors":

> A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation,

---

[3] Although Blazek suggests that the defects in the former implied consent notice rendered it per se coercive, this Court has noted that our Supreme Court has "never held" to this effect. *Kallon v. State*, 355 Ga. App. 546, 549 (845 SE2d 348) (2020).

threat of physical punishment, or lengthy detention to obtain the consent. . . . The defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary. The defendant's failure to express an objection to the test or change his or her mind also is evidence of actual consent.

(Citation omitted.) *Jackson v. State*, 340 Ga. App. 228, 228-29 (1) (797 SE2d 152) (2017). A court evaluating the totality of circumstances in a DUI arrest "should consider whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter." (Citation and punctuation omitted.) *Kendrick v. State*, 335 Ga. App. 766, 769 (782 SE2d 842) (2016). Here, the parties "appear to agree on all the relevant facts and evidence" such that "we review the trial court's application of the law to the facts de novo, examining the entire record and making an independent determination of the ultimate issue of voluntariness." (Citation and punctuation omitted.) Id. at 768.

The record includes the testimony of the arresting officer, who described the circumstances of the call and arrest, including Blazek's field sobriety test and results, which showed all six clues for the horizontal gaze nystagmus (HGN) test, five of

eight for the walk-and-turn test, and two of four for the one-leg stand test.[4] The arresting officer also testified that after Blazek agreed to the breath test, which was positive, and was arrested for less-safe DUI, he tried to walk away, but was "jovial" during his following transport to jail, making jokes about stopping for fried chicken on the way.

The trial court weighed each of the factors outlined in our previous opinion before determining that under the totality of the circumstances, including Blazek's age, education and intelligence, as well as the nature of his interaction with the arresting officer and the not undue length of the detention, showed that he "freely and voluntarily" consented to the breath test. This record supports the trial court's determinations that Blazek was not so impaired as to render him incapable of consent and that there was nothing coercive or threatening about his interaction with the arresting officer. *Kendrick*, 335 Ga. App. at 769; see also *State v. Nicholson*, 342 Ga. App. 118, 121 (1) (803 SE2d 85) (2017) (reversing a trial court's finding that the totality of circumstances showed a lack of consent when there was no evidence to show that the defendant was "extremely intoxicated" or that his interaction with the trooper was coercive or threatening); *State v. Depol*, 336 Ga. App. 191, 198-199 (784

---

[4] There is no indication in the record of any video recording of the arrest.

SE2d 51) (2016) (reversing a trial court's finding that the totality of circumstances showed a defendant so impaired that he lacked the ability to consent when the video and other undisputed evidence showed that he was not thus impaired and did actually and voluntarily consent). "On this record, . . . considering all of the facts before us, and affording appropriate deference to the trial court that heard the testimony first-hand, we affirm." (Footnote omitted.) *Kendrick*, 335 Ga. App. at 772.

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur*.