**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 19, 2025**

# In the Court of Appeals of Georgia

A25A1943. VIJ v. THE STATE.

MARKLE, Judge.

In this interlocutory appeal involving an arrest for driving under the influence, Ankur Vij challenges the trial court's denial of his motion to suppress his blood test results, contending he lawfully revoked his consent to the test, albeit days after initially consenting to the blood draw. For the reasons that follow, we affirm.

"On appeal from a ruling on a motion to suppress, we defer to the trial court's factual findings and credibility determinations, but review de novo the court's application of the law to the undisputed facts." *State v. Nicholson*, 342 Ga. App. 118 (803 SE2d 85) (2017) (citation omitted).

The relevant facts are uncontroverted. In October 2023, Vij was arrested for driving under the influence, and he consented to a blood test. Several days after his blood had been drawn and sent to the laboratory, but prior to its analysis, Vij's counsel notified the Georgia Bureau of Investigation in writing that Vij had withdrawn his consent to the blood test. In its response, the GBI cited to *State v. Simmons*, 270 Ga. App. 301 (605 SE2d 846) (2004), and informed Vij that he could no longer withdraw his consent. The GBI proceeded to analyze his blood for alcohol. As a result, Vij was charged with driving under the influence (per se), driving under the influence (less safe), open container, speeding, and failure to carry a license.

Thereafter, Vij moved to suppress the test results, contending that he had a constitutional right to withdraw his consent as long as the test had not yet been performed; therefore, the test amounted to an illegal, warrantless search under the Fourth Amendment. The trial court denied the motion, but certified its decision for immediate review. We granted Vij's application for interlocutory appeal, and this appeal followed.

In his sole enumeration of error, Vij contends the trial court erred in refusing to suppress the test results because he maintained a reasonable expectation of privacy

2

in his blood even after it was drawn, and thus he could revoke his consent at any time prior to its testing. We disagree.

Under OCGA § 40-5-55(a), Georgia's implied consent law, drivers in this state are deemed to have granted their consent to blood tests to determine their blood alcohol content if they are arrested for driving under the influence. See OCGA § 40-6-391. Nevertheless, "[a] suspect's right under the Fourth Amendment to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood, and the *extraction* of blood is a search within the meaning of the Georgia Constitution." *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015) (emphasis supplied). Thus, "Georgia drivers do have a constitutional right to refuse to consent to warrantless blood tests." *Olevik v. State*, 302 Ga. 228, 233(2)(a) (806 SE2d 505) (2017). But, once consent has been granted, a search warrant and probable cause are no longer required. *Williams*, 296 Ga. at 821; *Newman v. State*, 375 Ga. App. 448, 455(3)(b) (916 SE2d 484) (2025). See also *Schneckloth v. Bustamonte*, 412 US 218, 219 (93 SCt 2041, 36 LE2d 854) (1973). And the Fourth Amendment is satisfied once an accused has voluntarily consented to the search. *La Anyane v. State*, 321 Ga. 312, 316(2)(a), 319(2)(b) (913 SE2d 635) (2025) ("Under the Fourth Amendment, a search

authorized by consent is wholly valid as long as consent is freely and voluntarily given.") (citation modified).[1] See also *Schneckloth*, 412 US at 219.

Importantly, we have already determined that a criminal defendant "could not withdraw [his consent to a blood test] after submitting to a blood draw." *Newman*, 375 Ga. App. at 456(3)(b); *Simmons*, 270 Ga. App. at 304 (precluding the withdrawal of voluntary consent to blood alcohol test where sample had been drawn, but not yet been tested). We see no reason to depart from this holding here.

Although Vij seeks to reframe the argument as a matter of constitutional privacy rights, he propounds no relevant or binding legal authority in support, nor have we found any.[2] Relying primarily on *State v. de la Paz*, 370 Ga. App. 853 (899 SE2d 447) (2024), he asserts that he maintained a constitutional privacy interest in his untested blood sample. Indeed, "[t]he touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *Gordon*

---

[1] Vij does not contend that his initial consent to blood alcohol testing was involuntary.

[2] To support his argument that this purported privacy right in his blood sample allows him to withdraw his consent to the test, Vij relies on opinions involving searches of places of residence, and on extra-jurisdictional case law. These cases are either distinguishable or merely persuasive.

*v. State*, 277 Ga. App. 247, 249 (626 SE2d 214) (2006) (citation modified). But *de la Paz* is not favorable to Vij's position.

There, the defendant declined to consent to a blood draw at the outset, compelling law enforcement to obtain a warrant. *de la Paz,* 370 Ga. App. at 854-55. Although the warrant was limited to blood alcohol testing, the sample was subsequently tested for drugs. Id. at 855. We held that the drug test exceeded the scope of the warrant, and law enforcement was thus required to obtain either the defendant's consent or a warrant specifically authorizing the drug testing. Id. at 857(1)(a), 858(1)(b). Within this context, we explained "the ensuing chemical analysis of the blood sample to obtain physiological data is a further invasion of privacy interests." Id. at 859(2) (citation modified). See also *Skinner v. R. Labor Executives' Ass'n*, 489 US 602, 616(II)(B) (109 SCt 1402, 103 LE2d 639) (1989) (involving mandatory blood and urine tests for railroad employees).[3] However, we took pains to

---

[3] In full, the *Skinner* court explained, "it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable. The ensuing chemical analysis of the sample to obtain physiological data is a further invasion of the tested employee's privacy interests." 489 US at 616(II)(B). But, that opinion does not stand for the proposition that a blood alcohol test involves two separate searches, as Vij would have it. Rather, in its analysis, the Court synthesizes the draw and the subsequent chemical analysis as a singular "blood test." See, e.g., id. at 625(III)(B) ("[T]he intrusion occasioned

clarify that, under ordinary circumstances involving a valid warrant for chemical blood analysis, law enforcement is *not* required to obtain two warrants, i.e., one for the draw and one for the subsequent testing. Id. at 858-59(1)(b). Thus, we did not hold, as Vij insists, that there is an overarching "continued privacy interest in blood after it is drawn" that would require a renewed warrant or consent upon revocation under the circumstances here.[4]

Nor could we. What Vij seeks is the equivalent of an accused revoking his consent to the examination of items already seized during a valid search, such as the subsequent testing of suspected narcotics. This interpretation of the Fourth Amendment is extreme and inconsistent with our precedent.

Accordingly, the trial court committed no error in denying Vij's motion to suppress.

*Judgment affirmed. Doyle, P. J., and Padgett, J., concur.*

---

by a blood test is not significant, since . . . the quantity of blood extracted is minimal[.]") (citation modified).

[4] We are also not persuaded by Vij's reliance on *Gates v. State*, 317 Ga. 889 (896 SE2d 536) (2023), which involved an ex parte order authorizing the State to obtain blood test results in the defendant's medical records without his consent or a valid warrant.