319 Ga. 658
FINAL COPY

S24A0487. WYATT v. THE STATE.

LaGrua, Justice.

Appellant Donte Wyatt was convicted of malice murder and
related crimes in connection with the April 2015 strangulation death
of Catherine Montoya.[1] In his sole enumeration of error, Wyatt

---

[1] The crimes occurred on April 13, 2015. On June 16, 2016, a DeKalb
County grand jury indicted Wyatt for malice murder (Count 1), felony murder
(Count 2), three counts of aggravated assault (Counts 3, 6, and 7), aggravated
sodomy (Count 4), rape (Count 5), home invasion (Count 8), burglary in the
first degree (Count 9), false imprisonment (Count 10), theft by taking (Count
11), and criminal trespass (Count 12). Wyatt was tried in October 2016, and
the jury found him guilty of all counts. He was sentenced to serve life in prison
without the possibility of parole for malice murder (Count 1), a consecutive
sentence of life in prison with the possibility of parole for aggravated sodomy
(Count 4), a consecutive sentence of life in prison without the possibility of
parole for rape (Count 5), 20 concurrent years in prison for aggravated assault
(Counts 6 and 7), a consecutive sentence of life in prison with the possibility of
parole for home invasion (Count 8), ten consecutive years in prison for false
imprisonment (Count 10), ten consecutive years in prison for theft by taking
(Count 11), and 12 consecutive months in prison for criminal trespass (Count
12). All other counts were merged or vacated by operation of law. In total,
Wyatt received three life sentences without the possibility of parole and one
life sentence with the possibility of parole, plus 20 years to serve in prison and
an additional 12 months to serve. Wyatt filed a timely motion for new trial,
which was amended through new counsel. After holding an evidentiary
hearing, the trial court denied the motion for new trial on September 1, 2023.
Wyatt filed a timely notice of appeal, and the case was docketed to the Court's
April 2024 term and submitted for a decision on the briefs.

contends that the trial court erred in admitting evidence that he attacked his ex-wife in the hours prior to killing Montoya because the probative value of such evidence was substantially outweighed by the danger of unfair prejudice in violation of OCGA § 24-4-403. We affirm for the reasons set out below.

The evidence presented at trial established that Wyatt was married to Heather Duffy from 2004 until February 2015, at which time Duffy moved into another home with the couple's two children. Duffy testified that, on April 11, 2015, she took the children on a one-night trip to Tennessee, during which she received multiple calls and text messages from Wyatt and received a notification that her home security alarm had been triggered. Around 8:15 a.m. on April 13, 2015, Duffy received a text message from Wyatt containing a picture of her car keys, for which she had been searching. Wyatt claimed he found the car keys in his pants pocket. Wyatt and Duffy arranged to meet at a diner in Henry County to exchange the car keys. At the time of this meeting, Wyatt was driving a white Chevrolet Silverado pick-up truck that Duffy had rented for him.

2

Upon meeting, Wyatt requested a hug from Duffy and for her to eat breakfast with him before he returned the keys. Duffy reluctantly agreed. Once they sat at a table, Wyatt accused Duffy of keeping their children away from him. Duffy told Wyatt that she "[was]n't going to discuss that," and Wyatt left the table and exited the diner. Duffy watched Wyatt enter the rental truck, which was parked in the diner's parking lot, and just "sit[ ] there." Duffy approached the truck to ask Wyatt for her keys. Wyatt responded by asking Duffy for another hug. Duffy told him that she "ain't got time for all this hugging" and began walking to her car, which was parked near the truck. Wyatt stepped out of the truck and followed Duffy.

As Duffy entered her vehicle, Wyatt stood by the car so that she was unable to close the door and asked Duffy what their children "would do if they d[idn't] have [him] or they d[idn't] have [her]," which Duffy took as a threat. Duffy told Wyatt to move so that she could drive away. In response, Wyatt "put his head down" and told her that "he was . . . sorry it got to go this way, but this the way it's going to go," and proceeded to stab her with something in the leg.

3

Wyatt then told her that he was planning to "stab [her] eight times in [her] face" and was "fixing to kill [her]." Wyatt asked Duffy for the keys to her car and stabbed Duffy "again in [her] thigh." Duffy then moved over to the passenger seat and Wyatt entered the car, sitting in the driver's seat. Wyatt "lifted his shirt up, and . . . pulled some [zip-]ties out and duct tape out from underneath his shirt" and told Duffy to "put [her] hands in [the] ties." Duffy then told Wyatt that she had dropped the car keys outside, and Wyatt told her to stay in the vehicle while he looked, warning her that "if [she] tr[ied] to run" he was "going to kill [her] right here in this van." Wyatt exited the car and Duffy "jumped out," yelling at a man who was exiting the diner to "please help [her]" because Wyatt was "trying to kill [her]." Wyatt then ran over to Duffy and stabbed her with a knife in the back, which Duffy was able to remove. The man told Duffy to "just run" and called 911. Duffy ran toward a nearby gas station and jumped into a parked car. Wyatt then drove off in the rental truck. Duffy testified that Wyatt stabbed her a total of four times.

The responding Henry County officers arrived on the scene

around 9:00 a.m. Duffy informed one of the officers that Wyatt had stabbed her and was driving the rental truck. The officer contacted the rental company, which disabled the truck and informed the officer of the truck's location in DeKalb County.

DeKalb County officers were dispatched to the truck's location, which happened to be right outside of Montoya's house,[2] and arrived on the scene around 11:30 a.m. One officer testified that, while the officers were maintaining a perimeter around the vehicle, he saw a man matching Wyatt's description walk out of the house, attempt to start the truck, then walk back inside the house. A few minutes later, the officer observed a maroon Kia Sorento — later identified as Montoya's vehicle — back out of the driveway. A second officer followed the Kia in his own vehicle and, after observing the Kia drive through a stop sign, turned on his lights. The Kia then sped down the street and crashed near a ravine. Upon approaching the vehicle, officers discovered that it was empty, and multiple K-9 officers followed Wyatt's scent with their dogs through the woods to another

---

[2] There was no apparent connection between Wyatt and Montoya.

5

nearby house.[3] The DeKalb County SWAT Team was dispatched to this other house and informed that the suspect "was wanted for a separate crime in Henry County that involved a knife" and "had fled into one house, later came out of the house and fled again in a vehicle and broke into another home." The SWAT Team arrested Wyatt, and, at the time of his arrest, Wyatt was in possession of a Kia car key. Investigators also discovered a knife in the basement of the house where he was arrested that tested positive for Wyatt's and Montoya's DNA.

Meanwhile, at Montoya's house, an officer knocked on the door, received no response, and entered. Inside, the officer "immediately noticed blood splatters on the floor as well as . . . the wall" and that the "furniture had been ransacked." He then found Montoya's body "seated on the floor," with a black scarf "wrapped around her neck" and tied "to the doorknob." The medical examiner who performed Montoya's autopsy testified that he determined the cause of death to be "ligature asphyxia" because he believed Montoya "may not

---

[3] Wyatt had no apparent connection with this house.

have been deceased at the time that she was hung from the door handle," because the hanging itself "contribute[d] to [her] death." The medical examiner further testified that Montoya had several "blunt force injuries"; four distinct stab wounds; what appeared to be a "shoe mark" on her face; "internal injuries to her head"; and several "defensive injuries" on her hands and arms. In addition to the autopsy, the medical examiner performed a sexual assault collection kit, which revealed that Montoya's left breast and mouth tested positive for the presence of Wyatt's DNA. The State's forensic expert testified that the source of the DNA from Montoya's mouth swab was semen.[4]

At trial, the defense's theory of the case was that Wyatt was not guilty by reason of insanity.

Appellant contends that the trial court erred in admitting into evidence "the Henry County incident" because the probative value

---

[4] Investigators also discovered in Montoya's office multiple empty liquor bottles and a manila folder stating "I can't live without my family. I love my kids. We did fraud tax[e]s, loved my wife," which was introduced into evidence without objection. However, there was no further testimony regarding the note and no evidence establishing who wrote it.

of this evidence was substantially outweighed by unfair prejudice in violation of OCGA § 24-4-403 ("Rule 403"). We disagree.

Prior to Wyatt's trial, defense counsel filed a notice of intent to raise the issue of insanity at trial, and the trial court ordered a mental evaluation of Wyatt. Wyatt declined to submit to the court-ordered evaluation. Nevertheless, defense counsel submitted a request for the jury to be charged on not guilty by reason of insanity on the day before the start of Wyatt's trial.

The trial proceeded to opening statements, during which the parties referenced the Henry County incident and Wyatt's insanity defense.[5] The following morning, defense counsel moved in limine to restrict the testimony from Duffy and the Henry County officers. Defense counsel conceded that the Henry County incident was intrinsic, but argued that its only relevance was to show that there was a dispute between Wyatt and Duffy, that Wyatt was reported to

---

[5] The opening statements were not transcribed and, therefore, are not included in the record on appeal. However, a colloquy among the parties and the trial court established that the parties made these references during opening statements.

8

be in a certain vehicle, and that the vehicle was disabled in DeKalb County.

In response, the State argued that the Henry County incident was "highly relevant," because Wyatt was asserting an insanity defense, such that it made "everything [he] did and said on that day . . . relevant in terms of deciding and determining his state of mind." The State concluded by arguing that the only inquiry the trial court needed to make was whether the evidence was admissible under Rule 403 and asserted that the probative value of the evidence was substantially greater than the danger of undue prejudice.

The trial court ultimately ruled that the evidence related to the Henry County crimes was admissible under Rule 403, noting that defense counsel had introduced Wyatt's insanity defense during his opening statement and, therefore, the State needed "to get into what [Wyatt's] mindset was that day."

The jury then heard testimony from Duffy, who described the events leading up to and surrounding her stabbing. Duffy testified that Wyatt's demeanor during the attack "was the same" as his

typical demeanor, and that at no point during the attack did it appear that Wyatt did not understand what was happening. On cross-examination, defense counsel questioned Duffy about Wyatt's mental capacity and his past hospitalization at a psychiatric hospital. Duffy responded that Wyatt received social security disability "[b]ecause they said that he was mental retarded, but he played that" and that he was hospitalized "[b]ecause he had a warrant on him, and he said therefore he would be able to get away with that warrant if he [was hospitalized]." The jury also heard testimony from the Henry County responding officer, who stated that she had contacted the rental company to disable the truck and informed DeKalb County law enforcement officials of the incident. Additionally, a Henry County crime scene investigator testified that a roll of duct tape, zip-ties, and Duffy's wallet had been obtained from Duffy's vehicle, and two forensic experts testified that the duct tape roll found in Duffy's vehicle contained a DNA profile matching Wyatt and Wyatt's fingerprint. The jury also viewed the crime scene photographs of the diner's parking lot and Duffy's vehicle, and five

photographs of Duffy at the hospital. The photographs showed Duffy in the hospital bed, her bandaged wounds, and the defense injuries she sustained on her hands. The jury also heard testimony from three witnesses at the scene, one of whom testified that Wyatt, who appeared "calm," had told her to "get the f*** out of [his] way" and to "move [her] car," so that he could drive away, and that Duffy was yelling for someone to "[p]lease go get [her] kids."

Prior to deliberations, the trial court charged the jury on insanity as a defense, as requested by the defense. The trial court instructed the jury that a person shall be found not guilty of a crime "if, at the time of the act, . . . that person did not have the mental capacity to distinguish between right and wrong in relation to the act," or "because of mental disease, injury, or congenital deficiency, acted because of a delusional com[pulsion] that overpowered the person's will to resist committing the crime."

On appeal, Wyatt argues that evidence of the Henry County incident should have been excluded pursuant to Rule 403 because its probative value was substantially outweighed by the danger of

unfair prejudice. According to Wyatt, the Henry County evidence had little probative value because it did not help prove any of the elements of the offenses charged and it was unfairly prejudicial given the violent nature of the attack.[6]

Rule 403 provides in pertinent part that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." OCGA § 24-4-403. We have explained that evidence has probative value where "the State need[s] to rebut [an] insanity defense" and the evidence shows that the defendant acted with "deliberation and an awareness of the wrongness of [his] actions," *Morgan v. State*, 307 Ga. 889, 896 (3) (b) (838 SE2d 878) (2020), and that "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly," *Flowers v. State*, 307 Ga. 618, 622 (2) (837 SE2d 824)

---

[6] Wyatt concedes that the Henry County incident evidence is intrinsic to the crimes charged and does not challenge its relevance under OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401.

12

(2020) (citation and punctuation omitted). Moreover, because inculpatory evidence in a criminal trial is "inherently prejudicial," Rule 403 permits exclusion "only when *unfair* prejudice substantially outweighs probative value." *Wilson v. State*, 315 Ga. 728, 738 (8) (883 SE2d 802) (2023) (citation and punctuation omitted; emphasis in original). "Therefore, when we review the Rule 403 balancing test [on appeal], we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Perkins v. State*, 313 Ga. 885, 898 (4) (873 SE2d 185) (2022) (citation and punctuation omitted). And, because the admission of evidence lies within the sound discretion of the trial court, "[w]e will not disturb a trial court's determination as to the admissibility of evidence absent a clear abuse of discretion." *Jones v. State*, 315 Ga. 117, 121 (3) (880 SE2d 509) (2022) (citation and punctuation omitted).

We see no abuse of discretion in the trial court's decision here. The State needed to rebut Wyatt's insanity defense, and because there was no evidence that Wyatt's mental state changed over the

course of the day, the Henry County incident evidence was probative of Wyatt's awareness of the wrongness of his actions and ability to act with deliberation during the entire crime spree. The evidence showed that Wyatt was aware of the wrongness of his actions because, in the hours immediately preceding Montoya's murder, Wyatt committed a similar crime against Duffy — stabbing her a total of four times — and, before doing so, told her that he was "sorry it got to go this way." Then, after committing the crime against Duffy, Wyatt fled the scene to avoid any consequences for his behavior, just as he did after stabbing Montoya and gaining possession of her vehicle. The evidence was also probative of Wyatt's ability to act with deliberation, as it showed that Wyatt lured Duffy to the diner under the notion that he had her car keys and made sure to have in his possession the knife, duct tape, and zip-ties. Moreover, the evidence was probative of Wyatt's demeanor during the crime spree, as Duffy testified that Wyatt was not acting unusual prior to stabbing her and appeared to understand his actions, and a witness on the scene testified that Wyatt was "calm"

14

as he fled the scene. Thus, the Henry County incident evidence had significant probative value because it rebutted Wyatt's insanity defense by demonstrating that, right before Montoya's murder, Wyatt was aware of the wrongfulness of his actions and had the ability to act with deliberation, and Wyatt did not claim or produce any evidence at trial that his mental state changed over the course of the crime spree. See *Foster v. State*, 306 Ga. 587, 589 (1) (832 SE2d 346) (2019) (testimony pertaining to defendant's demeanor on the day of the shooting probative to rebut defense's claim that he was insane at the time of the shooting).

Nor can we say that the probative value of the admitted evidence was substantially outweighed by the danger of *unfair* prejudice. See *Harris v. State*, 313 Ga. 225, 232 (3) (869 SE2d 461) (2022) ("Rule 403 does not bar admission of . . . evidence merely because the defendant might suffer some amount of prejudice upon its introduction; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." (citation and punctuation omitted; emphasis in original)). The trial court

instructed the jury that it was to decide the crimes charged in the indictment — which were limited to Wyatt's crimes against Montoya and the criminal trespass he committed when fleeing Montoya's house. The trial court also read the indictment to the jury twice and provided the jury with a written copy of the indictment, thereby reducing the risk that Wyatt would be unfairly prejudiced by the jury convicting Wyatt for his conduct against Duffy rather than the conduct charged in the instant case. See *Smith v. State*, 307 Ga. 263, 276 (3) (b) (834 SE2d 1) (2019) ("We presume that the jury follows the trial court's instructions."). Moreover, there were no video recordings of the Henry County crime scene introduced into evidence, and the photographs of the crime scene and of Duffy at the hospital were not particularly gruesome, such that they were likely to inflame the emotions of the jury. See *Morgan*, 307 Ga. at 897 (3) (c), 899 (3) (f) (considering whether the contested evidence was "likely to incite feelings of revulsion, disbelief, shock, sadness, and anger" for the purpose of the Rule 403 balancing test and noting that "video . . . of an event is often much more emotionally powerful than

testimony or even still photographs"). Accordingly, we conclude that the trial court did not abuse its discretion in admitting evidence of the Henry County incident at trial.

*Judgment affirmed. All the Justices concur.*

Decided September 4, 2024.

Murder. DeKalb Superior Court. Before Judge Asha Jackson.

*Lee & Ziegler, Konrad G. W. Ziegler*, for appellant.

*Sherry Boston, District Attorney, Jason M. Rea, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.