321 Ga. 312
FINAL COPY

S24A1112. LA ANYANE v. THE STATE.

PINSON, Justice.

Evelyn-Natasha La Anyane was convicted of driving under the influence (DUI) of alcohol less safe and other traffic offenses. During the traffic stop that led to her arrest, La Anyane was read the statutory implied-consent warning about submitting to a test of her blood or other bodily substance for alcohol. She consented to a blood test, and the results were used against her at trial.

On appeal, La Anyane argues that Georgia's entire implied-consent statutory scheme is unconstitutional on its face and as applied to her. She contends that the implied-consent warning unconstitutionally coerces drivers to consent to a blood test by telling them, falsely, that their consent is required, and that their refusal can be offered against them at trial. She contends that because any consent obtained through the implied-consent warning is not free

and voluntary, the implied-consent statutory scheme unconstitutionally authorizes law enforcement officers to take drivers' blood without a search warrant, valid consent, or any other exception to the warrant requirement. And she contends that the trial court made two evidentiary errors by (1) refusing to let her cross-examine an expert with a study about field sobriety tests and (2) allowing evidence about her blood alcohol content even though she was charged with DUI less safe and not DUI per se.

These claims fail. The implied-consent warning was not unconstitutionally coercive as applied to La Anyane here: it did not tell her that her consent was "required," as she contends, and its statement that a driver's refusal to consent to a blood test can be used against her at trial has never been held unconstitutional or otherwise "false." And La Anyane otherwise consented freely and voluntarily to a test of her blood, so that search was authorized under the Fourth Amendment. Because La Anyane's as-applied challenge to the implied-consent statutory scheme fails, she lacks standing to

bring her facial challenge on the basis that scheme authorizes warrantless searches as a general matter. Finally, the trial court did not abuse its discretion in determining that La Anyane did not lay a proper foundation for the field study, or in determining that her blood alcohol content was relevant and not unfairly prejudicial in a prosecution for DUI less safe.

1. *Background*

(a) *Implied-Consent Statutory Scheme*

As in every state, driving under the influence of alcohol is a crime in Georgia. See OCGA § 40-6-391 (a) (1) & (5). To help enforce that prohibition, several of our statutes authorize police officers to request to test DUI suspects for the presence of intoxicants and allow the results of those tests to be admitted as evidence at trial. These statutes, which are often referred to generally as the implied-consent statutory scheme, are what La Anyane challenges in this appeal.

The implied-consent statutory scheme declares that any driver on Georgia roads "shall be deemed to have given consent . . . to a

3

chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug," if the driver is arrested for DUI. OCGA § 40-5-55 (a). These tests are administered "at the request of a law enforcement officer having reasonable grounds to believe" that the driver is under the influence. Id. The requesting officer is directed to "designate which of the test or tests" — of blood, breath, urine, or other bodily substances — is administered, except that a blood test is required if the driver has been involved in an accident resulting in serious injuries or fatalities. Id. The results of any tests are admissible against the driver at trial, see OCGA § 40-6-392 (a), and — subject to constitutional exceptions discussed further below — the defendant's *refusal* to consent to testing of her "blood, breath, urine, or other bodily substance" is also admissible against her, OCGA § 40-6-392 (d).

Along with these substantive provisions, the implied-consent statutory scheme prescribes a verbal warning for law enforcement officers to read to drivers whom they suspect of driving under the

4

influence. See OCGA § 40-5-67.1 (b) (2). That implied-consent warning essentially tells motorists about the substantive provisions discussed above. It explains that a driver's privilege of getting a Georgia driver's license is "conditioned" on her "submitting" to "state administered chemical tests" of her blood or other bodily substances to determine if she is under the influence of alcohol or drugs. The warning further explains that, if the driver refuses to submit to a chemical test, her driver's license will be suspended for at least a year and her refusal "may be offered into evidence against [her] at trial." OCGA § 40-5-67.1 (b) (2).[1]

---

[1] The implied-consent warning reads in full:

The State of Georgia has conditioned your privilege to drive upon the highways of this state upon your submission to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to blood or urine testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the requested state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel

5

(b) *This Case*

Police stopped La Anyane for, among other things, failing to maintain her lane and not using her high-beams properly. During the traffic stop, officers noticed that her eyes looked "red" and "glassy," her breath smelled of alcohol, her speech was slurred, and her shirt was stained with what appeared to be red wine. La Anyane stated that she had had one drink.

Officers began investigating whether La Anyane was driving under the influence of alcohol or another drug. They had her perform several field-sobriety exercises, including horizontal-gaze nystagmus, walk and turn, and one-leg stand. La Anyane failed the exercises. Police then administered a preliminary breath test, which La Anyane also failed. At that point, the officers placed La Anyane under arrest.

Once La Anyane was under arrest, officers read her the statutory implied-consent warning. La Anyane consented to have her

---

of your own choosing. Will you submit to the state administered chemical tests of your (designate which test)?
OCGA § 40-5-67.1 (b) (2).

blood drawn and tested. During the test, she asked, "What is this for," and an officer responded that it was "part of [her] DUI process." Apart from that question, La Anyane did not say or do anything to suggest she had changed her mind about submitting to the blood test or that she was doing so against her will.

The blood test revealed a blood alcohol content of 0.117 grams per 100 milliliters, which is above the legal limit of 0.08. See OCGA § 40-6-391 (a) (5). La Anyane was charged with failure to maintain lane, failure to dim lights, and DUI less safe, all misdemeanors. She pleaded not guilty.

Before trial, La Anyane moved to suppress the results of the chemical blood test. She argued, among other things, that the implied-consent warning is "inherently coercive, inaccurate, [and] misleading" because it falsely implies that motorists are required to submit to testing, and because it "incorrectly state[s] that the refusal [to submit] will be admissible at trial against Defendant contrary to constitutional guarantees (both state and federal)." La Anyane ar-

7

gued that this meant her consent to the blood test was not truly voluntary.

The trial court denied the motion to suppress and admitted the results of La Anyane's blood test. At trial, the jury found La Anyane guilty of all counts.

2. *Analysis*

Although La Anyane makes constitutional arguments under multiple headings in her brief, we understand those arguments to work together as follows. La Anyane contends that Georgia's implied-consent statutory scheme violates the Fourth Amendment to the United States Constitution because it authorizes police officers to take the blood of a DUI suspect without a search warrant or a valid exception to the warrant requirement.[2] And although that

---

[2] La Anyane's argument that her blood draw was unconstitutional focuses only on the Fourth Amendment to the United States Constitution and decisions interpreting and applying it. Although she cites the Georgia Constitution's similar provision, Ga. Const. of 1983, Art. I, Sec. I, Par. XIII, she makes no separate argument under that provision, so we address her argument only under the Fourth Amendment. See *Smallwood v. State*, 310 Ga. 445, 447 (2) n.2 (851 SE2d 595) (2020) (declining to analyze a due process claim under the Georgia Constitution where the defendant "cite[d] in passing" the due process clause of the Georgia Constitution but made no separate argument and cited no cases in support of the state constitutional claim).

scheme instead contemplates such blood draws to be authorized by the driver's consent — which makes a Fourth Amendment search valid — she contends that the implied-consent warning given to drivers is "unconstitutionally coercive," so a driver who agrees to a blood test has not given free and voluntary consent. As a result, La Anyane contends, her blood was drawn and tested — a Fourth Amendment search — without authorization that satisfies the Fourth Amendment. In short, her argument turns on whether she gave free and voluntary consent to the blood test. If so, the police conducted a valid search, and her constitutional challenge to the statute fails. So we start with La Anyane's contentions about consent and then address her remaining arguments.

(a) Under the Fourth Amendment, a search "authorized by consent" is "wholly valid" as long as consent is freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (II) (93 SCt 2041, 36 LE2d 854) (1973). See also *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009) ("a valid consent to a search eliminates the

need for either probable cause or a search warrant"). And we ordinarily determine whether consent was free and voluntary by assessing the totality of the circumstances. See id. La Anyane does not dispute that she gave the police her consent to have her blood drawn and tested. But she points to one circumstance that she says made her consent not truly voluntary: the implied-consent warning the police read to her before giving her consent was, in her view, "unconstitutionally coercive." She focuses on two aspects of the implied-consent warning: the statement that Georgia "has conditioned your privilege to drive upon the highways of this state upon your submission to state administered chemical tests," and the warning that "[y]our refusal to submit to blood or urine testing may be offered into evidence against you at trial." In La Anyane's view, these statements mislead drivers about their constitutional right not to agree to chemical testing.

La Anyane's claim fails at its premises, because neither of the two parts of the implied-consent warning that she objects to is coercive for the reasons she gives.

(i) The implied-consent warning does not tell drivers that they are "required" to submit to a blood test, as La Anyane contends. Indeed, we have already rejected that exact argument. In *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017), we concluded that the implied-consent warning clearly tells drivers that they can choose not to consent to chemical testing. See id. at 249 (3) (a). As we explained in *Olevik*, the implied-consent warning does that by putting before the driver at least three times the possibility of refusal. The implied-consent warning states: "If you refuse this testing, your Georgia driver's license or privilege to drive . . . will be suspended[.]" It then warns: "Your refusal to submit to . . . testing may be offered into evidence against you at trial." And it ends by squarely presenting the choice: "Will you submit to the state administered chemical tests?" See id. (citing OCGA § 40-5-67.1 (b) (2)). We explained in *Olevik* how those phrases inform drivers that they can refuse a chemical test: "Because the notice refers to a right to refuse, advises suspects of the consequences for doing so, and concludes with a request to submit to testing, a reasonable suspect relying solely on the

11

notice should understand that the State is asking for a suspect's co-operation, rather than demanding it, and that they have a right to refuse to cooperate." Id.[3]

In addition to including this language about the driver's right to refuse a chemical test, the implied-consent warning notably omits any reference to a criminal penalty for refusing. That is because there is none: drivers may incur civil penalties, as the implied-consent warning warns, but they will not be charged with a separate offense if they do not consent to testing. Compare *Birchfield v. North Dakota*, 579 U.S. 438, 450-451 (II) (A) & 477 (VI) (136 SCt 2160, 195 LE2d 560) (2016) (where a statute made it a misdemeanor to refuse to submit to a blood test, and drivers in DUI investigations were told of the criminal consequence if they refused to submit, the drivers

_____

[3] The implied-consent warning was amended after *Olevik*, and the version that was read to La Anyane was slightly different than the one we considered in that case. Where the implied-consent warning in *Olevik* warned that "[y]our refusal to submit to *the required* testing may be offered into evidence against you at trial," see *Olevik*, 302 Ga. at 249 (3) (a) (emphasis added), the version read to La Anyane said that "[y]our refusal to submit to *blood or urine* testing may be offered into evidence against you at trial," OCGA § 40-5-67.1 (b) (2) (emphasis added). That change does not affect our conclusion that the implied-consent warning is clear that drivers have the option to refuse testing.

"[could not] be deemed to have consented to submit to a blood test on pain of committing a criminal offense"). All of this means that a reasonable driver being read the implied-consent warning would understand that she can refuse to consent to a chemical test without being charged with a crime — and she would be right. So the implied-consent warning does not tell drivers that their consent is mandatory, as La Anyane contends.

La Anyane also seems to contend that the very notion of implied consent is improper — that the State cannot "condition[ ] your privilege to drive" on your submission to a chemical test. But again, the warning itself is clear that the driver can refuse consent. So to the extent "implied consent" is built into the statute, it is not absolute or irrevocable. The driver retains the right to refuse a chemical test without being charged with another crime. And although such a refusal may have civil consequences, neither we nor the United States Supreme Court has held that such consequences are unconstitutional. Cf. *Birchfield*, 579 U.S. at 476-477 (VI) ("Our prior opin-

13

ions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."). This basis for La Anyane's argument that the implied-consent statutory scheme is unconstitutionally coercive therefore fails.

(ii) La Anyane's second contention about the implied-consent warning — that it is unconstitutionally coercive because it tells drivers, falsely, that their refusal to consent to a blood test can be used against them — also fails under the circumstances here.

La Anyane is correct that the implied-consent warning tells drivers that their refusal to consent to a blood test may be used against them at trial. But she has not shown that that statement is "false" as she claims. The warning is consistent with Georgia statutory law, which provides that the State can introduce into evidence at trial a driver's refusal to submit to a test of her "blood, breath, urine, or other bodily substance," see OCGA § 40-6-392 (d), and neither we nor the United States Supreme Court has ever held that that statute is unconstitutional. It is true that we held in *Elliott v.*

14

*State*, 305 Ga. 179 (824 SE2d 265) (2019), that OCGA § 40-6-392 (d) is unconstitutional as applied to *breath* tests, because under the Georgia Constitution, providing deep lung air for a breath test is a self-incriminatory act, and a person's exercise of her right not to incriminate herself cannot be used against her. See Ga. Const. of 1983, Art. I, Sec. I, Par. XVI; *Elliott*, 305 Ga. at 209 (IV). But we have never held that drawing someone's blood implicates the right against compelled self-incrimination under the Georgia Constitution, and the United States Supreme Court has rejected the argument that the federal right against compelled self-incrimination is implicated by a blood draw. See *Olevik*, 302 Ga. at 232 (2) (a) n.2 (noting that in *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973), "we concluded that extracting blood did not cause the defendant to be a witness against himself under the Fifth Amendment and 'similar provisions of Georgia law,' approvingly citing cases to the effect that the removal of evidence from a defendant's body does not implicate his right against compelled self-incrimination," and that "[n]othing we say here should be understood as casting any doubt on

15

*Strong*'s self-incrimination holding"). See also *Schmerber v. Califor-nia*, 384 U.S. 757, 764-765 (II) (86 SCt 1826, 16 LE2d 908) (1966) (explaining that a suspect who submits to a blood test is not provid-ing testimony or performing an incriminatory act but is instead be-coming "the source of 'real or physical evidence'"). Nor have we oth-erwise held that evidence of a driver's refusal to consent to having her blood drawn for testing cannot be used against her. See *State v. Randall*, 318 Ga. 79, 81 (2) (897 SE2d 444) (2024) (describing that question as "thorny and unresolved"). And that question is not be-fore us in this case: La Anyane does not contend that refusal evi-dence may not be used against her, nor could she, because she did not refuse to have her blood drawn, so no such evidence of refusal exists in this case.[4]

All of that is to say that the police officer who read La Anyane

---

[4] Separate from these constitutional considerations, a trial court might exclude a driver's refusal to submit to a blood test under the ordinary rules of evidence — for instance, if its probative value were substantially outweighed by the danger of unfair prejudice. See OCGA § 24-4-403. But the fact that such evidence could be excluded on a case-by-case basis does not make the implied-consent warning categorically "false" or unduly coercive.

the implied-consent warning did not give her a "false[]" warning, at least about the consequences of refusing a blood test. In other words, La Anyane's claim fails at its premise: because she has not established that the implied-consent warning was "false," her claim that it is unconstitutionally coercive on that basis fails.[5] And she has offered no other reason to conclude that her consent was not given freely and voluntarily under the totality of the circumstances. See *Brooks*, 285 Ga. at 425-426.

(b) In light of our conclusion that La Anyane failed to establish that the implied-consent warning is unconstitutionally coercive, her Fourth Amendment claims cannot succeed.

Start with her as-applied challenge. La Anyane contends that the police drew her blood without a search warrant or a valid exception to the warrant requirement. But as explained above, a search

---

[5] La Anyane also briefly contends the implied-consent warning is unduly coercive because it tells drivers their driver's licenses may be suspended for a year if they refuse a blood test. That is a correct statement of Georgia law, and La Anyane offers no support for the argument that such a civil penalty is unconstitutional, nor are we aware of any. So her claim about the implied-consent warning fails on that basis as well.

"authorized by consent" is "wholly valid" as long as consent is freely and voluntarily given. See *Schneckloth*, 412 U.S. at 222 (II); *Brooks*, 285 Ga. at 425. And the record here shows that La Anyane gave the police express consent to draw her blood, and she has not established that her consent was coerced by the implied-consent warning or otherwise. Because La Anyane gave free and voluntary consent, the draw of her blood was a valid search under the Fourth Amendment.

Because La Anyane's as-applied challenge fails, she lacks standing to advance her broader argument that the law is unconstitutional on its face. That argument, as best we can tell, is that the implied-consent statutory scheme violates the Fourth Amendment rights of any and all drivers who are subjected to a blood draw because it authorizes that search without a warrant or the presence of any exception to the warrant requirement. But a litigant who has not established a violation of her own constitutional rights "cannot challenge a law on the ground that it might conceivably be applied unconstitutionally to others." *Ga. Dep't of Human Servs. v. Steiner*,

303 Ga. 890, 899 (III) (815 SE2d 883) (2018) (citation and punctuation omitted). Accord *County Ct. of Ulster County v. Allen*, 442 U.S. 140, 155 (II) (99 SCt 2213, 60 LE2d 777) (1979) ("As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."). So La Anyane's facial challenge fails, too.

3. La Anyane also contends that the trial court made two evidentiary errors at her trial. We review a trial court's evidentiary rulings for abuse of discretion. See *Smith v. State*, 318 Ga. 868, 873 (3) (901 SE2d 158) (2024).

(a) La Anyane contends that the trial court abused its discretion by refusing to allow her to cross-examine a State expert witness using a 1977 study of field sobriety tests. The witness was a police officer who had been qualified as an expert on DUI investigations. La Anyane tried to impeach the expert's credibility by asking about the study. The trial court allowed some questions, but when La Anyane tried to introduce into evidence a document that she said was

19

the study itself, and to read from it during questioning, the court sustained the State's objection that La Anyane had not laid a proper foundation. La Anyane argued that she did not need to lay a foundation for impeachment evidence, but the court rejected that argument. La Anyane then tried to lay a foundation by asking the expert about the study, but the expert testified that, although she was generally familiar with the study, she did not recognize the document La Anyane was holding or know what was in it.

La Anyane's claim fails because she did not establish that the document she claimed was the 1977 study was admissible. The document met the statutory definition of hearsay: It was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," OCGA § 24-8-801 (c). Because it was hearsay, the document was not admissible unless it fell under a statutory exception to the general rule excluding hearsay evidence. See OCGA § 24-8-802. And here, the only exception that might apply is the one for "learned

treatises" under OCGA § 24-8-803 (18), which provides that statements in "published treatises, periodicals, or pamphlets . . . on a subject of history, medicine, or other science or art" are admissible if they are called to the attention of an expert witness during cross-examination and are "established as a reliable authority by the testimony or admission of the witness, by other expert testimony, or by judicial notice." OCGA § 24-8-803 (18). But La Anyane did not show that the document she had in court was a "reliable authority." The expert she was cross-examining testified that she did not recognize the document, and La Anyane did not establish its reliability either through "other expert testimony" or by judicial notice. The trial court was therefore within its discretion to determine that La Anyane had not laid a foundation to admit the document under the hearsay exception of OCGA § 24-8-803 (18).

La Anyane contends that the document was nevertheless admissible simply because it was impeachment evidence. In support of that contention, she cites one Court of Appeals case in her reply brief, *Morris v. State Farm Mutual Automobile Insurance Company*,

203 Ga. App. 839 (418 SE2d 119) (1992), which noted that "evidence tendered for purposes of impeachment need not be of the kind or quality required for proving the facts in issue." Id. at 842 (9). But that language from *Morris* was about the weight or materiality of evidence, not its admissibility. See id. ("We are satisfied that appellant was not impeached as to wholly immaterial matters, but was attempted to be impeached as to matters at least indirectly if not directly material as to appellant's testimony and to issues in this case."). Neither *Morris* nor any other authority we are aware of supports La Anyane's contention that *inadmissible* evidence may be admitted if its purpose is for impeachment. Her claim that it was error to not admit the 1977 study therefore fails.

(b) La Anyane also contends that the trial court abused its discretion by allowing the State to introduce evidence about her blood alcohol content. She contends that that evidence was not relevant and was prejudicial given the specific offense with which she was charged.

The Georgia Code recognizes two types of DUI offenses: driving

22

"[u]nder the influence of alcohol to the extent that it is less safe for the person to drive," OCGA § 40-6-391 (a) (1), commonly known as DUI less safe; and driving when "[t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after . . . driving or being in actual physical control [of any moving vehicle] from alcohol consumed before such driving or being in actual physical control ended," OCGA § 40-6-391 (a) (5), which is known as DUI per se. La Anyane was charged with DUI less safe, so the State had to prove that she was "[u]nder the influence of alcohol to the extent that it [was] less safe for [her] to drive," but it did not have to prove anything specific about her blood alcohol content. In La Anyane's view, that means that any evidence of her blood alcohol content was not relevant and was prejudicial and was therefore not admissible. She objected to the blood alcohol content evidence on these grounds at trial, but the trial court overruled her objection.

This claim fails. First, La Anyane's blood alcohol content was relevant to the charge of DUI less safe. Evidence is relevant if it has

23

"any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. In a prosecution for DUI less safe, one element of the charged offense is that the defendant was "under the influence of alcohol." See OCGA § 40-6-391 (a) (1); *State v. Jones*, 297 Ga. 156, 160 (2) (773 SE2d 170) (2015). It should go without saying that a chemical blood test showing that La Anyane had alcohol in her bloodstream while driving does make it more probable that she was driving under the influence of alcohol.

La Anyane points out that the State introduced evidence showing not only that she had alcohol in her bloodstream, but also that her blood alcohol content was above the legal limit. She contends that that evidence about her blood alcohol content was unfairly prejudicial — especially since the prosecutor emphasized it in his closing argument — and that it should have been excluded under OCGA § 24-4-403 (Rule 403) ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

24

prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). But the exclusion of evidence under Rule 403 is an "extraordinary remedy," *Mills v. State*, 320 Ga. 457, 464 (3) (b) (910 SE2d 143) (2024) (citation and punctuation omitted), which should be used "only when *unfair* prejudice substantially outweighs probative value," *Wyatt v. State*, 319 Ga. 658, 663 (906 SE2d 380) (2024) (citation and punctuation omitted) (emphasis in original). Here, even if it was not strictly necessary for the State to show that La Anyane's blood alcohol content was above the legal limit, it was not unfairly prejudicial for it to do so. The fact that La Anyane had enough alcohol in her system to exceed the limit set by the General Assembly made it more likely that she was "under the influence" of alcohol, and it was not unfair for the State to present the two numbers side by side — the legal limit of 0.08 and La Anyane's blood alcohol content of 0.117 — to give the jury context about the amount of alcohol in her bloodstream. The trial court was thus within its discretion to admit this evidence, and so the claim fails.

25

*Judgment affirmed. All the Justices concur.*

Decided March 4, 2025 — Reconsideration denied March 27, 2025.

Implied consent; constitutional question. Fulton State Court. Before Judge Edlein.

*Willis Law Firm, Greg Willis, Jessica L. Jones, Casey A. Cleaver*, for appellant.

*Keith E. Gammage, Solicitor-General, Steven E. Rosenberg, Clarence E. Hollins III, Assistant Solicitors-General; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.

*Ashley L. Schiavone, Daniel J. Sabol, Blaise J. Katter*, amici curiae.