**THIRD DIVISION
DOYLE, P. J.,
MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 13, 2025**

# In the Court of Appeals of Georgia

A25A0087. WATTERS v. THE STATE.

MARKLE, Judge.

Following a jury trial, Christopher John Watters was convicted of driving under the influence of marijuana (less safe) and driving under the influence of methamphetamine, a controlled substance.[1] He appeals from his conviction and the trial court's denial of his motion for new trial, contending the trial court (1) erred by refusing to suppress the results of his blood test because the implied consent notice, OCGA § 40-5-67.1 (b) (2), violates due process; and (2) committed plain error by improperly instructing the jury as to the voluntariness of his consent to submit to the blood test. For the reasons that follow, we affirm.

---

[1] Watters was also convicted of failure to maintain lane and distracted driving.

"On appellate review of a ruling on a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." (Citation and punctuation omitted.) *State v. Walker*, 295 Ga. 888, 889, n. 1 (764 SE2d 804) (2014).

So viewed, the evidence at the motion to suppress hearing showed that, in October 2020, Watters drove his car off the road into a ditch. When law enforcement arrived, an officer observed that Watters was unsteady on his feet, and then noted the odor of marijuana when he inspected the car. Watters admitted to smoking marijuana hours prior to the accident. Watters then consented to field sobriety testing, from which the officer determined that Watters was impaired by marijuana to the extent he was less safe to drive.

The officer arrested Watters, and read him the implied consent notice, pursuant to OCGA § 40-5-67.1 (b) (2) (2019).[2] Watters consented to have his blood drawn, and

---

[2] The applicable implied consent notice, which the officer read to Watters, is as follows:

"The State of Georgia has conditioned your privilege to drive upon the highways of this state upon your submission to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or

he was transported to a medical facility for the purpose, having never withdrawn his consent. Watters's toxicology results showed the presence of marijuana and methamphetamine in his blood. He was charged with driving under the influence of marijuana (less safe) and driving under the influence of methamphetamine, a controlled substance.

Watters sought to suppress the blood test, contending that the statutory implied consent notice violated his constitutional due process rights and his right against self-

drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to blood or urine testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the requested state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your [blood]?"

OCGA § 40-5-67.1 (b) (2) (2019). The statute has since been amended, but not as to the language of this subsection. Compare OCGA § 40-5-67.1 (b) (2) (2024).

3

incrimination. Following the hearing referenced above, the trial court denied the motion. A jury convicted Watters of both counts of driving while impaired, and he filed a motion for new trial, raising the issues addressed herein. After a hearing, the trial court denied the motion for new trial. This appeal followed.

1. Watters first contends the trial court erred by admitting his blood test results because (a) the implied consent notice, OCGA § 40-5-67.1 (b) (2), violates due process by imposing unconstitutional penalties, such as threatening the suspension of a driver's license should a suspect refuse to submit to chemical testing, and (b) he was not given *Miranda*[3] warnings prior to the blood test; therefore, his consent was not voluntary.[4] We are not persuaded.

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt. 1602, 16 LE2d 694) (1966).

[4] To the extent Watters argues that the implied consent notice is unconstitutional because it incorrectly warns that the refusal to submit to a blood test may be admitted at trial, he misstates the applicable law. In Georgia, a refusal to submit to a State-administered blood test is still generally admissible at trial. See *State v. Dias*, 321 Ga. 261, 263-264 (914 SE2d 291) (2025) ("We did *not* hold in *Elliott* [*v. State*, 305 Ga. 179 (824 SE2d 265) (2019]], or in any other case, that evidence that a DUI suspect asserted her right under the Fourth Amendment to refuse to submit to a warrantless blood test is inadmissible at trial on the basis that . . . use of such evidence would infringe upon her right against unreasonable searches and seizures under the Fourth Amendment, her right to due process under the Fifth Amendment, and [Art. I, Sec. I, Par. XVI of the Georgia Constitution].");*Quint v. State*, 367 Ga. App. 339, 343 (886 SE2d 1) (2023); see also *La Anyane v. State*, 321 Ga. 312, 318 (2)

4

(a) *Due process and implied consent.*

Although a warrantless search of a criminal suspect's blood is presumed to violate the right against illegal search and seizures under the Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution, the law recognizes an exception where the defendant consents to the search. See *State v. Clay*, 339 Ga. App. 473, 475 (793 SE2d 636) (2016); see also *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015).

As our Supreme Court has explained,

> to determine the voluntariness of an incriminating statement or act for due process purposes is the same test used to determine the voluntariness of a consent to chemical testing in the DUI context. . . . [M]ere acquiescence to a blood test after being read the implied consent notice is not per se voluntary consent to a warrantless search; the State

---

(a) (ii) (913 SE2d 635) (2025) (noting the implied consent warning under OCGA § 40-5-67.1 (b) (2) "is consistent with Georgia statutory law, which provides that the State can introduce into evidence at trial a driver's refusal to submit to a test of her 'blood, breath, urine, or other bodily substance,' see OCGA § 40-6-392 (d), and neither we nor the United States Supreme Court have ever held that that statute is unconstitutional."); compare *State v. Bradberry*, 357 Ga. App. 60, 66 (3) (849 SE2d 790) (2020) (Because *a breath test* involves an affirmative self-incriminatory act, "Bradberry's refusal to submit to the alco-sensor breath test is inadmissible and therefore the trial court erred in denying his motion to suppress evidence of that refusal.").

must show that a suspect voluntarily consented to a blood test under the totality of the circumstances.

*Olevik v. State*, 302 Ga. 228, 248 (3) (a) (i) (806 SE2d 505) (2017); *Williams*, 296 Ga. at 822-823.

Here, the trial court clearly considered the totality of the circumstances in concluding that Watters had voluntarily consented to the blood test because there was no evidence of record that law enforcement coerced him with threats or promises, and he did not withdraw the consent at the time of the blood draw. As such, the trial court applied the correct standard. See *Williams*, 296 Ga. at 822-823.

Nevertheless, Watters contends the implied consent notice violates his due process rights because it unconstitutionally conditions the suspension of driving privileges upon the refusal to submit to State-administered chemical tests. He cites no applicable law for this position,[5] and this issue has already been decided unfavorably to him. See *Birchfield v. North Dakota*, 579 U. S. 438, 476-477 (VI) (136 SCt. 2160, 195

---

[5] We are not persuaded by Watters's reliance on *Sanders v. State*, 231 Ga. 608 (203 SE2d 153) (1974), which implicates First Amendment freedom of expression rights only. Moreover, because OCGA § 40-5-67.1 (b) (2) imposes no criminal sanctions on a refusal to submit to a blood test, and requests — rather than demands — a suspect's cooperation, there is no chilling effect on a suspect's right to refuse. See *La Anyane*, 321 Ga. at 317 (2) (a) (i) (913 SE2d at 640-641 (2) (a) (i)).

LE2d 560) (2016) ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."); *La Anyane v. State*, 321 Ga. 312, 317 (2) (a) (i) (913 SE2d 635) (2025) (noting that the Georgia implied consent notice does not threaten any criminal penalties for refusing, and is thus not unduly coercive); *Olevik*, 302 Ga. at 248 (3) (a) (i) ("Georgia's implied consent statute does not impose criminal penalties for refusing to submit to chemical testing, squarely putting our implied consent notice within the category of statutes that the Supreme Court of the United States has deemed not unconstitutionally coercive."); *Kendrick v. State*, 335 Ga. App. 766, 772 (782 SE2d 842) (2016) ("[A]lthough Kendrick testified that she thought the breath test was mandatory, she also said that her decision to submit to testing was motivated, at least in part, by a desire to keep her license, a recognition of the actual choice she had [to refuse the test]."). Notably, in *Olevik*, our Supreme Court rejected the appellant's due process arguments both as facially applied to the statute and as applied to the appellant.[6] 302 Ga. at 247-252 (3) (a)-(b); see also *So.*

---

[6] Additionally, in *Olevik*, our Supreme Court explained,

Because the notice refers to a right to refuse, advises suspects of the

*Dakota v. Neville*, 459 U. S. 553, 565 (III) (103 SCt. 916, 74 LE2d 748) (1983) (noting that the right to refuse a blood alcohol test "is simply a matter of grace bestowed by the [state] legislature."). Accordingly, we find no merit to Watters's arguments on this ground.

(b) *Voluntary consent.*

We are also not persuaded by Watters' contention that his consent was involuntary because he was under arrest and the officers failed to apprise him of his *Miranda* rights prior to requesting his consent. It is well settled that "an arrestee is not, under Georgia constitutional or statutory law, entitled to *Miranda* warnings before deciding whether to submit to the State's request for a test of breath, blood, or urine." (Citation omitted.) *Fofanah v. State*, 351 Ga. App. 632, 635 (1) (832 SE2d 449) (2019); see also *Olevik*, 302 Ga. at 250 (3) (a) (i), n. 13 (declining to "impose a Miranda-style prophylactic rule" to protect due process rights prior to the reading of

---

consequences for doing so, and concludes with a request to submit to testing, a reasonable suspect relying solely on the notice should understand that the State is asking for a suspect's cooperation, rather than demanding it, and that they have a right to refuse to cooperate.

302 Ga. at 249 (3) (a) (i).

implied consent notice). As discussed above, the trial court determined that Watters consent was voluntary based on the totality of the circumstances. As a result, this argument is also unavailing.

2. Watters next contends that the trial court committed plain error by failing to instruct the jury as to the rights they were to consider in determining whether his consent was voluntary.[7] This argument is belied by the record, which reflects that the trial court informed the jury that Watters had the right to refuse the blood test; it was the State's burden to prove his consent was voluntary; and that the jury was to decide if the implied consent notice violated Watters's Fourth Amendment rights. Watters makes no showing that the charge as given was otherwise erroneous; this argument thus fails. See *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013) ("[A] failure

---

[7] To the extent Watters argues that the jury should have been informed as to his *Miranda* rights as they would relate to his consent to the blood test, this argument fails for the reasons stated in Division 1 (b). See *Lindsey v. State*, 353 Ga. App. 231, 239 (4) (836 SE2d 563) (2019) ("A requested jury charge must be legal, apt and precisely adjusted to some principle involved in the case and be authorized by the evidence.") (citation omitted).

to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.") (citation and punctuation omitted).

*Judgment affirmed. Doyle, P. J., and Padgett, J., concur.*